**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

|  |  |  |
|---|---|---|
| AKIRA TECHNOLOGIES, INC. | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 1:17cv00412 (LO/IDD) |
|  | ) | |
| CONCEPTANT, INC., *et al.* | ) | |
|  | ) | |
| Defendants. | ) | |
|  | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

This Memorandum is submitted on behalf of Defendants Conceptant, Inc. ("Conceptant"), NuCognition, Inc. ("NuCognition"), Joshua Phipps ("Mr. Phipps"), Lisa Houle ("Ms. Houle"), and Andrey Mikhalchuk ("Mr. Mikhalchuk") (collectively, "Defendants")[1] in support of their Motion to Dismiss the Complaint filed by Plaintiff, Akira Technologies, Inc. ("Akira").

The Complaint has eight Counts[2] as follows:

| Count 1 | Against all Defendants | Misappropriation of a Trade Secret under the Defense of Trade Secrets Act |
|---|---|---|
| Count 2 | Against all Defendants | Misappropriation of a Trade Secret under the Virginia Uniform Trade Secrets Acts |
| Count 3 | Against Defendants Conceptant, Phipps Houle, and Mikhalchuk | Tortious Interference with a Contract and Business Expectancy |

---

[1] By Order dated May 23, 2017, the Court dismissed Defendants Chiron Solutions, Inc., David Wood, and Shannon Munley, with prejudice, from the case.

[2] Although the Complaint reflects nine Counts, no Count 8 appears in the Complaint, leaving a total of eight Counts.

| Count 4 | Against Defendants Phipps, Houle, and Mikhalchuk | Breach of Duty of Loyalty |
|---|---|---|
| Count 5 | Against all Defendants | Common Law Civil Conspiracy |
| Count 6 | Against all Defendants | Statutory Business Conspiracy |
| Count 7 | Against Defendant Phipps | Breach of Contract |
| Count 9[3] | Against Defendant Houle | Breach of Contract |

As explained in this Memorandum, accepting the allegations in the Complaint as true, Counts 1 and 2 should be dismissed with prejudice because (1) the information Akira claims are "trade secrets" are not trade secrets as defined by the applicable Federal and state statutes; (2) Akira failed to take reasonable measures to keep its information secret; (3) the so-called "trade secrets" are matters of public record and readily accessible on the Internet; (4) Akira itself did not consider the information to be "trade secrets" and did not instruct its employees to treat it as such; (5) Akira has not pled that it identified and labeled the information specifically as "trade secrets" as it was required to do by the Employment Agreements it had with its employees; and (6) Defendants did not "misappropriate" any information under the relevant statutes.

Count 3 should be dismissed with prejudice because (1) Akira failed to provide any factual or legal basis for the speculative assertion that it had a "reasonable expectation of future contracts with the FDA;" (2) Akira failed to plead that it would have bid on the opportunities at issue had it known of them and that it was reasonably certain of winning the bids had it done so; (3) Akira admits in its pleading that it was unaware of one of the opportunities and therefore cannot legitimately claim it had an "expectancy" that was "interfered with;" (4) the Complaint shows that the opportunities at issue were outside of Akira's lines of business for which it had no interest or plans in pursuing; (5) Akira has pled that the duty underlying Count 3 arises under the

---

[3] As stated, there is no Count 8.

Employment Agreements it had with its employees, which precludes Count 3 (a tort claim) from proceeding under Virginia's source-of-the-duty rule; and (6) Akira's claim for damages is based upon the speculative notion that it "could have" pursued and won the opportunities at issue had it known of them, requiring dismissal of Count 3.

Count 4 should be dismissed with prejudice because (1) the acts ostensibly underlying the claimed breach of fiduciary duty were entirely lawful; (2) the law permitted Defendants to form their own companies before resigning from their employment with Akira; (3) Akira's allegations show that Defendants did not compete with it, took no business away from it, and did not interfere with any opportunity that Akira had an interest in or any intention or plans of pursuing; (4) Count 4 is precluded by the source-of-the-duty rule; and (5) Akira's claim for damages is speculative, devoid of factual support, and requires dismissal of Count 4.

Counts 5 and 6 should be dismissed with prejudice because (1) the acts ostensibly underlying the alleged conspiracy were all lawful; (2) it is not legally possible to accuse the individual Defendants of "conspiring" with the corporate Defendants given their positions as officers and directors of these entities; and (3) Akira has no non-speculative basis for claiming damages, requiring dismissal of Counts 5 and 6.

Count 7 should be dismissed with prejudice because (1) the portion of Defendant Phipps' Employment Agreement upon which Akira relies, by its terms, did not obligate him to bring new business opportunities to Akira's attention; (2) no such obligation appears in Mr. Phipps' Employment Agreement; (3) there can be no claim that Mr. Phipps breached a contractual obligation that does not exist; and (4) Akira's claim for damages against Mr. Phipps is speculative and requires dismissal of Count 7.

Count 9 should be dismissed with prejudice because (1) the portion of Defendant Houle's Employment Agreement upon which Akira relies, by its terms, did not obligate her to bring new business opportunities to Akira's attention; (2) no such obligation appears in Ms. Houle's Employment Agreement; (3) there can be no claim that Ms. Houle breached a contractual obligation that does not exist; (4) no facts have been pled, nor could be, that Ms. Houle violated her non-compete with Akira; and (5) Akira's claim for damages against Ms. Houle is speculative and requires dismissal of Count 9.

In sum, Akira's Complaint does not satisfy the <u>Twombly</u> and <u>Iqbal</u> standards for pleading causes of action in Federal court.  "To survive a motion to dismiss, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." <u>Kincaid v. Anderson</u>, 2017 U.S. App. LEXIS 3854, at *3 (4th Cir. Mar. 3, 2017).  Akira's Complaint does not meet this standard, that is, it does not "raise a right to relief above the speculative level." More specifically, the Complaint fails to "contain sufficient factual allegations, taken as true, to raise a right to relief above the speculative level and nudge [the] claims across the line from conceivable to plausible." <u>Birmingham v. PNC Bank, N.A.</u>, 846 F.3d 88, 92 (4th Cir. 2017). Akira's claims remain at the speculative level and contain little to no "pleading of factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>.[4]

As shown below, the central reason for dismissing Akira's Complaint is that it fails the "mandate that a plaintiff demonstrate more than a sheer possibility that a defendant has acted unlawfully [and] relies upon naked assertions and unadorned conclusory allegations devoid of factual enhancement." <u>Id</u>.

---

[4] This is especially the case for Defendant, NuCognition, about which there is not a single allegation or any legal basis stated in the Complaint that supports the Counts against it.

**ARGUMENT**

**I.   COUNTS 1 AND 2 SHOULD BE DISMISSED WITH PREJUDICE[5]**

Akira claims in Counts 1 and 2 that all five Defendants misappropriated its trade secrets in violation of the Defense of Trade Secrets Act ("DTSA") and the Virginia Uniform Trade Secrets Act ("VUTSA").  Complaint ("Compl.") ¶¶ 137-68.[6]  In its Complaint, however, Akira fails to identify any "trade secrets" that were "misappropriated" under the DTSA and VUTSA.

The DTSA defines "trade secrets," in relevant part, as follows:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if –
>
> **(A)**   the owner thereof has taken reasonable measures to keep such information secret; and
>
> **(B)**   the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).[7]

As the definition makes clear, in order for information to qualify as a "trade secret," a plaintiff must show in its pleading that it took "reasonable measures to keep such information secret" and that the information is "not [ ]  generally known" and "not [ ] readily ascertainable through proper means."  Id.

---

[5] Because the Federal and state statutes at issue are substantially identical, and the allegations in Counts 1 and 2 are identical, these counts are considered together.

[6] Notwithstanding Akira inexplicably folding Defendant NuGognition into Counts 1 and 2, there is not one single allegation or any legal basis stated in the Complaint that connects NuGognition to these Counts, and for this reason, the Motion to Dismiss Counts 1 and 2 as to NuGognition should be granted with prejudice without further discussion.

[7] The VUTSA's definition of "trade secrets" is substantially similar.  Va. Code Ann. § 59.1-336.

According to the Complaint, Defendants "misappropriated" two of Akira's "trade secrets." The first is the existence and identification of five contracts that were previously awarded to Akira by Federal agencies. Compl. ¶¶ 120-21. The second is the existence of a "software prototype" called "Patient Cohort Tool" which Akira claims it had "plans to develop." Compl. ¶¶ 85, 119. Each is addressed in turn.

### A.   Akira's Contracts Are Not "Trade Secrets"

According to the Complaint, Defendants revealed "trade secrets" by identifying five Federal contracts that Akira had previously been awarded in a grant proposal Defendants submitted to the Food and Drug Administration ("FDA"). Compl. ¶¶ 120-21. However, at least three of the five contracts have been a matter of public record for some time and can be easily accessed on the Internet. <u>Compare</u> Compl. ¶ 121 (referencing Contract Nos. HHSF223201400164C, HHSF223201510173C, and 14-233-SOL-00490) <u>with</u> Exhibits 1-3 hereto (highlighted printouts from the Internet confirming the existence and identification of these three Akira contracts along with "Award Summaries" and "Transaction Details" of each contract).[8] Clearly, Akira's contracts, at least three of the ones at issue, are "generally known" and "readily ascertainable through proper means," and Akira failed to take "reasonable measures to keep such information secret." Akira's contracts are plainly not trade secrets. <u>See</u> <u>Religious Tech. Ctr. v. Lerma</u>, 897 F. Supp. 260, 266 (E.D. Va. 1995) (holding the plaintiff could not

---

[8] "In conducting its analysis, the Court may take judicial notice of matters of public record and may also consider documents attached to the complaint, as well as documents attached to the motion to dismiss, so long as they are integral to the complaint and authentic." <u>Bd. of Trs. v. Four-C-Aire, Inc.</u>, 2017 U.S. Dist. LEXIS 61358, at *7-8 (E.D. Va. Apr. 21, 2017) (O'Grady, J.) (quoting <u>Secy of State For Defence v. Trimble Navigation Ltd.</u>, 484 F.3d 700, 705 (4th Cir. 2007)); <u>see also</u> <u>Kerr v. Marshall Univ. Bd. of Governors</u>, 824 F.3d 62, 68 (4th Cir. 2016) ("In ruling on a motion to dismiss for failure to state a claim, courts may rely on evidence that is extraneous to the complaint without converting the motion to one for summary judgment — provided that the evidence's authenticity is not challenged and the evidence is integral to and explicitly relied on in the complaint") (internal quotation marks and citation omitted).

establish that certain documents were "not generally known" since they appeared on the Internet and thus were not trade secrets).[9]

In addition, the Complaint describes how Akira's past proposals and contracts are stored *externally* on a platform called "Google Drive."  Compl. ¶¶ 68, 70.  While Akira claims its employees are given usernames and passwords to access this information, Compl. ¶ 69, the Complaint provides no description of how storing information on such an external platform constitutes a "reasonable measure" to keep the information secret from others outside of Akira. In fact, the Google Terms of Service and Privacy Policy, which are publicly available (Exhibit 4),[10] show that any information that is stored on the platform is accessible and usable by Google and other third-parties:

> *We may review content* to determine whether it is illegal or violates our policies, and we may remove or refuse to display content that we reasonably believe violates our policies or the law.

> When you upload, submit, store, send or receive content to or through our Services, *you give Google (and those we work with) a worldwide license to use, host, store, reproduce, modify, create derivative works* (such as those resulting from translations, adaptations or other changes we make so that your content works better with our Services), *communicate, publish, publicly perform, publicly display and distribute such content.*

> *Our automated systems analyze your content (including emails)* to provide you personally relevant product features, such as customized search results, tailored advertising, and spam and malware detection. *This analysis occurs as the content is sent, received, and when it is stored.*

> *We may share non-personally identifiable information publicly and with our partners* – like publishers, advertisers or connected sites. For example, we may share information publicly to show trends about the general use of our services.

---

[9] In fact, Akira's contracts do not even qualify as "Confidential Information" under the Employment Agreements it had with its employees.  See Exhibit 1 to Complaint, p. 3, ¶ 6(a) ("Confidential Information" does not include "information which becomes generally available to the public other than as a result of a disclosure by the Employee"); Exhibit 4 to Complaint, p. 4, ¶ 7(a) (same).

[10] See supra note 8.

Exhibit 4 (emphasis added; see highlighted passages).

Given that information stored externally on Google Drive is accessible and usable by Google and other third-parties, Akira cannot claim that storing its contracts on such a platform constitutes a "reasonable measure to keep such information secret," or that the information it stores there constitutes "trade secrets" under the DTSA and VUTSA.  See Microstrategy Servs. Corp. v. OpenRisk, LLC, 2015 U.S. Dist. LEXIS 32719, at *22 (E.D. Va. Mar. 17, 2015) ("[T]rade secret protection is eviscerated when otherwise protected information is disclosed to others who have no obligation to protect its confidentiality").

### B.      The "Patient Cohort Tool" Is Not a "Trade Secret"

According to the Complaint, Defendants revealed "trade secrets" by identifying in their FDA grant proposal a "software prototype" called "Patient Cohort Tool" which Akira claims it "had plans to develop [ ] in Akira Labs."  Compl. ¶¶ 85, 119.  "Akira Labs" is described in the Complaint as a folder that Akira maintains on another external platform called "Amazon Web Services."  Compl. ¶¶ 78-9.  However, as with Google Drive, the Complaint provides no description of how storing information externally on "Amazon Web Services" constitutes a "reasonable measure" for keeping the information secret.  In fact, the Amazon Web Services Terms of Service, which are also publicly available,[11] show that information stored on the platform is accessible and usable by Amazon and potentially by other third-parties:

> *You will provide information or other materials related to Your Content (including copies of any client-side applications) as reasonably requested by us to verify your compliance with the Agreement.*  We may monitor the external interfaces (e.g., ports) of Your Content to verify your compliance with the Agreement.  You will not block or interfere with our monitoring, *but you may use encryption technology or firewalls to help keep Your Content confidential.*

---

[11] See supra note 8.

Exhibit 5 (emphasis added; see highlighted passages).

While the Amazon Terms of Services make mention of "encryption technology or firewalls to help keep [information] confidential," there is no allegation in the Complaint that Akira has used these measures to safeguard the information it stores on this platform. Accordingly, Akira cannot claim that storing its "software prototypes," including the "Patient Cohort Tool," externally on Amazon Web Services constitutes a "reasonable measure to keep such information secret," or that the information it stores there are "trade secrets" under the DTSA and VUTSA.

### C.     The Complaint Fails to Plead Any "Misappropriation"

According to the Complaint, Defendants "misappropriated" Akira's previously-awarded contracts and the "Patient Cohort Tool" by referencing them in their grant proposal to the FDA. Compl. ¶¶ 119-21.  The DTSA defines "misappropriation," in relevant part, as follows:

[T]he term "misappropriation" means—

> **(A)**   acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> **(B)**   disclosure or use of a trade secret of another without express or implied consent by a person who –
>
> > **(i)**   used improper means to acquire knowledge of the trade secret;
> >
> > **(ii)**   at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was –
> >
> > > **(I)**   derived from or through a person who had used improper means to acquire the trade secret;
> > >
> > > **(II)**   acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(III)   derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret….

18 U.S.C. § 1839(5).[12]

As the definition makes clear, only "trade secrets" can be "misappropriated." However, as shown above, the information Akira claims was "misappropriated" are not "trade secrets" under the statutes, or even under the Employment Agreements that Akira had with its employees. It follows that Defendants cannot be found in violation of these statutes.

Moreover, Akira is not alleging, because it cannot, that any of the Defendants "acquired" Akira's trade secrets "by improper means." The Complaint confirms that Akira granted Defendants Phipps, Houle, and Mikhalchuk proper access to the information. Compl. ¶¶ 72-3, 76-7, 81, 87. While the Complaint alleges that these Defendants passed on the information to Defendants Conceptant and NuGognition, the Complaint does not allege, and cannot, that either corporate Defendant "[knew] or ha[d] reason to know that the [information] was acquired by improper means," since, as the Complaint acknowledges, the information had been properly acquired by the individual Defendants. See id.

Finally, Akira cannot claim that Defendants acquired the information at issue "under circumstances giving rise to a duty to maintain the [information's] secrecy," given Akira's failure to plead that it "labeled or identified" the information specifically as a trade secret, as it was required to do under the "Confidential Information" sections of the Employment Agreements it had with its employees. See Exhibit 1 to Complaint, p. 3, ¶ 6(a); Exhibit 4 to Complaint, p. 4, ¶ 7(a).

For the reasons above, Counts 1 and 2 should be dismissed with prejudice.

---

[12] The VUTSA's definition of "misappropriation" is substantially equivalent. Va. Code Ann. § 59.1-336.

## II.     COUNT 3 SHOULD BE DISMISSED WITH PREJUDICE

Akira broadly claims in Count 3, without any factual support, that Defendants tortiously interfered with its "reasonable expectation of future contracts with FDA."  Compl. ¶ 171.  However, the only specific "future contract with FDA" Akira claims it had a "reasonable expectation" of receiving was the research and development "Health and Product Safety Platform work" that Defendant Conceptant allegedly bid for and won with the assistance of Defendants Phipps, Houle, and Mikhalchuk.  Compl. ¶ 171.  The only other "future contract" Akira claims it had a "reasonable expectation" of receiving, with which Defendants allegedly interfered, was with the City of Baltimore.  Compl. ¶ 172.

However, upon a plain reading of the Complaint, all Akira is alleging is that it "could have bid" on these contracts had it known about them, *not* that it actually *would have* bid on them, and had it bid, it would have won them.  Compl. ¶¶ 171-72; see Moore v. United Int'l Investigative Services, Inc., 209 F. Supp. 2d 611, 619-20 (E.D. Va. 2002) (plaintiff must allege and prove existence of expectancy based "upon something that is a concrete move in that direction").   In fact, there are no allegations in the Complaint that the FDA research and development grant or the City of Baltimore opportunities fell within Akira's lines of business, or that Akira had sought the same or similar types of opportunities in the past, or that it even had the slightest interest in pursuing these particular opportunities.  To the extent, therefore, that Count 3 is based on the speculative claim of what Akira *might* have done had it known of the opportunities, it is insufficient as a matter of law and should be dismissed.

As well, Akira's claim that it had a "reasonable expectation" of obtaining these contracts but for the alleged interference of Defendants, is deficient as a matter of law.  A plaintiff must plead and prove that it was *reasonably certain* it would have been awarded the contract or

11

business at issue had it not been for the tortious interference of the defendant.  Williams v. Dominion Tech. Partners, LLC, 265 Va. 280, 289 (2002) (plaintiff must prove with "reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy").  Pleading only of an "expectation" of receiving the FDA and Baltimore contracts, and not that it was reasonably certain of winning these contracts had it bid for them, is insufficient.  See Commercial Roofing & Sheet Metal Co. v. Gardner Eng'g, 60 Va. Cir. 384, 386-87 (Fairfax 2002) ("Expectations of being allowed to bid on a project does not rise to the level of a reasonable expectation of further contractual relations").  Count 3 should therefore be dismissed with prejudice.

In addition, a plaintiff must be aware of a business opportunity in order to claim it had an expectancy to it.  See Moore, 209 F. Supp. 2d at 619-20.  Here, Akira admits in paragraph 175 of the Complaint that it "did not even discover that the City of Baltimore opportunity existed until it began assembling this lawsuit."[13]  That being the case, Akira cannot legitimately claim it had an "expectancy" that was interfered with regarding the Baltimore opportunity.  Akira does not allege that the Baltimore opportunity was in one of its lines of business; or that it sought the same or similar opportunities in the past from city or state governments; *or even that the Baltimore opportunity culminated in an awarded contract for any of the Defendants.*  For these reasons as well, Count 3 should be dismissed with prejudice.

Count 3 should also be dismissed under Virginia's "source of duty" rule.  See Augusta Mut. Ins. Co. v. Mason, 274 Va. 199 (2007).  In Augusta, the Virginia Supreme Court held that if the duty underlying a cause of action arises from a contract between the parties, the plaintiff's remedies are confined to the law of contracts and tort remedies are prohibited.  Id. at 206-08.  Here, the alleged duty underlying Count 3 has been pled to be contractual in nature, as shown by

---

[13] Plaintiff does not allege, nor can it, that the Baltimore opportunity was not publicly available information.

Counts 7 and 9 of the Complaint where it is stated that Defendants Phipps and Houle were required by their Employment Agreements with Akira to bring business opportunities to the attention of Akira's management, and that their alleged failure to do so constitutes a breach of that contractual duty.  Compl. ¶¶ 212-21.  Because Akira pleads that the alleged duty underlying Count 3 is contractual in nature, Count 3 should be dismissed with prejudice.

For all the reasons stated, Count 3 should be dismissed with prejudice.

## III.    COUNT 4 SHOULD BE DISMISSED WITH PREJUDICE

Akira claims in Count 4 that Defendants Phipps, Houle, and Mikhalchuk breached their fiduciary duties in three ways: "misappropriating" Akira's "trade secrets" (Compl. ¶ 185); forming competing companies (Compl. ¶¶ 182-84); and "submit[ing] proposals in the names of these companies to at least two Akira clients" (Compl. ¶ 186)[14] and "one non-client of Akira, the City of Baltimore" (Compl. ¶¶ 186-87), opportunities that Akira claims it "was eligible to compete for."  Compl. ¶ 188.  Each one is addressed in turn.

### A.    "Misappropriation" of Akira's "Trade Secrets"

Such alleged "violations" of the DTSA and VUTSA were addressed previously in response to Counts 1 and 2.  The two "trade secrets" claimed in this case – Akira's previously awarded contracts and the so-called "Patient Cohort Tool" – are neither "trade secrets" nor were "misappropriated" under these laws.

### B.    Forming Competing Companies

It is not a breach of fiduciary duty for employees to put plans in place to compete against their employers before resigning.  Feddeman & Co. v. Langan Assocs., P.C., 260 Va. 35, 42 (2000) ("We agree that, prior to resignation, these defendants were entitled to make

---

[14] One "client" to whom a proposal was allegedly provided was the U.S. Customs and Border Patrol (Compl. ¶ 96), but that allegedly involved former Defendant Chiron Solutions, Inc., who has been dismissed from this case.

arrangements to resign, including plans to compete with their employer, and that such conduct would not ordinarily result in liability for breach of fiduciary duty"); see also Williams, 265 Va. at 289 ("[A]n employee has the right to make arrangements during his employment to compete with his employer after resigning his post").  Accordingly, the allegation that Defendants Phipps, Houle, and Mikhalchuko, prior to their resignations, formed companies to compete with Akira cannot provide the basis for a breach of fiduciary duty claim.

### C.      Submitting Proposals and "Competing"

This aspect of Count 4 suffers from the same infirmities as Count 3.  While Akira complains that Defendants Phipps, Houle, and Mikhalchuk did not alert Akira to the FDA and Baltimore opportunities, there are no allegations that Akira would have sought these opportunities had it been aware of them, or that it was reasonably certain of winning the work had it bid.  Without such allegations, Count 4's claim for damages is wholly speculative, requiring dismissal.

Central to Count 4 – indeed to Akira's Complaint – is the allegation that the FDA is Akira's "client" and Defendants jeopardized and interfered with Akira's "future contracts with FDA."  Compl.  ¶¶ 27, 170.  But the Complaint shows that the "Food and Drug Administration" is *not* Akira's client.  The FDA is a huge bureaucracy.  See Exhibit 6 (FDA Organizational Chart).[15]  Akira has *one contract* with *one office* within the FDA – the Office of Regulatory Affairs.  Compl. ¶¶ 29-30.  Akira does not allege – and cannot allege – that Defendants competed for the business of Akira's customer, the FDA's Office of Regulatory Affairs.  The proposal allegedly won by Defendants – to which Akira objects and lies at the heart of this case (Compl. ¶ 128) – was submitted to a different office of the FDA, namely, the Office of Acquisitions and Grants Services.  See Exhibit 19 to Complaint, page 3 of 60 (top); see also

---

[15] See https://www.fda.gov/AboutFDA/CentersOffices/OrganizationCharts/ucm393155.htm.

Exhibit 7 hereto (description of FDA's Office of Acquisitions and Grants Services).  There is no

allegation in this case, nor could there be, that the Office of Acquisitions and Grants Services is

Akira's customer, or that Akira had any plans or any intention of seeking work or research and

development grants from that Office.

 Finally, Count 4 should be dismissed because, like Count 3, Akira has pled that the

alleged duty to bring business opportunities to Akira's attention – the gravamen of the breach of

fiduciary duty claim – is contractual in nature.  <u>See</u> Counts 7 and 9 of the Complaint.  Given that

pleading, Akira's potential remedies in this matter are confined to the law of contracts, <u>Augusta</u>

<u>Mutual</u>, <u>supra</u>, and the breach of fiduciary duty claim (Count 4) should be dismissed with

prejudice.

## IV. COUNTS 5 AND 6 SHOULD BE DISMISSED WITH PREJUDICE[16]

In Counts 5 and 6, Akira reprises its allegations that Defendants conspired to compete

against Akira while they were employees by creating their own companies and diverting

business opportunities to themselves using Akira's trade secrets.  Compl. ¶¶ 192-99.  However,

the law is clear that the underlying acts of an alleged conspiracy must be unlawful, or unlawful

means were used to accomplish lawful objectives.  <u>Commercial Business Sys. v. BellSouth</u>

<u>Servs.</u>, 249 Va. 39, 48 (1995).

As shown above, each of the alleged acts or means underlying the alleged conspiracy was

not unlawful.  Contrary to Counts 1 and 2, there were no "trade secrets" of Akira's that were

"misappropriated" in violation of the DTSA and VUTSA.  Contrary to Count 3, Defendants did

not unlawfully interfere with Akira's business given the absence of allegations that Akira would

have sought the same work or grants that Defendants alleged sought and would have succeeded

had it done so.  Contrary to Count 4, the law permitted Defendants to plan to compete with Akira

---

[16] Because the allegations of conspiracy are identical, Counts 5 and 6 are addressed together.

by creating their own companies before they resigned. And contrary to Count 4, the Complaint shows that Defendants did not seek business from Akira's customer, the FDA's Office of Regulatory Affairs, and alleges that Defendants sought a research and development grant from a different office of the FDA (the Office of Acquisitions and Grants Services) that was not Akira's customer and with whom Akira had no interest in doing business.

In short, Akira has failed to plead any unlawful acts or means that could provide the predicate for a conspiracy. Akira also cannot base a conspiracy claim upon pure speculation, as it tries to do in ¶ 198 of the Complaint ("The Defendants acted together to solicit an unknown number of opportunities that were rightfully Akira to their own account"). See Warner v. Buck Creek Nursery, Inc., 149 F. Supp. 2d 246, 268 (W.D. Va. 2001) (Virginia business conspiracy statute does not cover "unspecified future business endeavor").

The Complaint is also devoid of allegations that Defendants conspired "*for the purpose* of willfully and maliciously injuring [Akira] in [its] reputation, trade, business or profession." Va. Code § 18.2-499A (emphasis added). Moreover, a corporation and its officers are legally incapable of forming a conspiracy. Fox v. Deese, 234 Va. 412, 428 (1987). In this regard, Akira alleges that Defendants Phipps, Houle, and Mikhalchuk are officers and directors of Conceptant (Compl. ¶¶ 107-09) and directors of NuGognition (Compl. ¶¶ 112-14). As a matter of law, therefore, the "conspiracy" that Akira alleges occurred between the individual Defendants and the corporate Defendants is legally impossible, and for this reason as well, Counts 5 and 6 should be dismissed with prejudice.

Even accepting the allegations in the Complaint as true, Akira does not allege, because it would be wholly speculative for it to do so, that had there been no alleged conspiracy, and had Defendants brought the FDA and Baltimore opportunities to its attention as Akira claims they

should have, Akira would have pursued these opportunities; that it had done so previously with similar opportunities; and that it was reasonably certain it would have won these opportunities had it pursued them.  Without a credible, non-speculative basis for making such allegations, which are absent from the Complaint, Akira has no factual or legal basis for seeking damages against Defendants, and no causes of action for tortious interference (Count 3), breach of fiduciary duty (Count 4), and conspiracy (Counts 5 and 6).

Accordingly, the conspiracy claims (Counts 5 and 6) should be dismissed with prejudice. See Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co., 191 F. Supp. 2d 652 664 (E.D. Va. 2002) (dismissing business conspiracy claim where the plaintiff provided "no specific factual basis" for it); GEICO v. Google, Inc., 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (dismissing business conspiracy claim because the "facts alleged were not sufficiently specific" to support the claim).

## V.     COUNT 7 SHOULD BE DISMISSED WITH PREJUDICE

Count 7 alleges that Defendant Phipps breached ¶ 6(b) of his Employment Agreement with Akira by "depriv[ing] Akira of at least one and likely more opportunities to contract with FDA and other federal agencies, opportunities that went to Conceptant instead."  Compl. ¶¶ 214-15.  However, the portion of ¶ 6(b) that Akira quotes in Count 7, by its terms, did not obligate Mr. Phipps to bring new business opportunities to Akira's attention:

> The Employee agrees to keep any and all of the Confidential Information from being made known or disclosed to any person or entity, except for the exclusive use and benefit of the Employer ….

See also Exhibit 1 to Complaint, p. 3, ¶ 6(a) (definition of "Confidential Information" does not include an obligation to bring new business opportunities to Akira's attention, the purported obligation that Mr. Phipps is accused of breaching in Count 7).

17

A review of Mr. Phipps' Employment Agreement, which Akira attached as Exhibit 1 to the Complaint, shows that the "obligation" which ostensibly forms the basis of Count 7 is not found anywhere therein, and in the absence of such a contractual obligation, there can be no cause of action for its breach.

In addition, because it is wholly speculative that Akira ever would have sought the FDA and Baltimore opportunities, and been awarded them had it done so, Akira has no factual or legal basis to claim that Mr. Phipps damaged it, and thus, no cause of action for breach of contract. Equally speculative are the assertions that, had it not been for Mr. Phipps' alleged breach of contract, Akira had "likely more opportunities to contract with FDA and other federal agencies." This is pure conjecture without any factual support even alleged.  For these reasons, Count 7 should be dismissed with prejudice.

## VI.     COUNT 9 SHOULD BE DISMISSED WITH PREJUDICE

Count 9 alleges that Defendant Houle breached ¶ 7(b) of her final Employment Agreement with Akira by "depriv[ing] Akira of at least one and likely more opportunities to contract with FDA and other federal agencies, opportunities that went to Conceptant instead." Compl. ¶¶ 220-21.  However, the portion of ¶ 7(b) that Akira quotes in Count 9, by its terms, did not obligate Ms. Houle to bring new business opportunities to Akira's attention:

> The Employee agrees to keep any and all of the Confidential Information from being made known or disclosed to any person or entity, except for the exclusive use and benefit of the Akira ….

See also Exhibit 4 to Complaint, p. 4, ¶ 7(a) (definition of "Confidential Information" does not include an obligation to bring new business opportunities to Akira's attention, which is the ostensible obligation that Ms. Houle is accused of breaching in Count 9).

A review of Ms. Houle's final Employment Agreement, which Akira attached as Exhibit 4 to the Complaint, shows that the "obligation" which ostensibly forms the basis of Count 9 is not found anywhere therein, and in the absence of such a contractual obligation, there can be no cause of action for its breach.

Count 9 also references the non-compete clause of Ms. Houle's final Employment Agreement, which states in part that "Employee … shall not, while employed full time by Akira … do[] work [for another entity] that is the same or similar to that of Akira."  Compl. ¶ 291.[17] However, in the paragraphs of the Complaint that discuss Conceptant (Compl. ¶¶ 106-10, 116-29) and NuCognition (Compl. ¶¶ 111-15) there are no allegations or any factual support for the assertion that either corporate entity "does work that is the same or similar to that of Akira."  The very opposite conclusion can logically be drawn based on the allegation that Conceptant obtained a research and development grant from an office of the FDA that is not Akira's customer and to whom Akira does not allege it had any interest in providing services, and given the description of what NuCognition does in Exhibit 18 to the Complaint (patient-focused solutions for people in the *private sector* with cognitive challenges) as compared to what Akira does ("[A] technology service provider to the *Federal Government*," Compl. ¶ 22) (emphasis added).[18]

Finally, what was stated about Mr. Phipps applies with equal force to Ms. Houle.  Since it is wholly speculative that Akira ever would have sought the FDA and Baltimore opportunities and been awarded them had it done so, it has no basis to claim that Ms. Houle damaged it, and

---

[17] Count 9 does not expressly accuse Ms. Houle of breaching her non-compete; it simply quotes from her non-compete.  Compl. ¶ 219.

[18] Count 9 quotes another passage from Ms. Houle's non-compete that during the year after she leaves Akira, she is to refrain from "doing substantially the same work under the same Akira customer project or program for which Akira hired [her]."  Compl. ¶ 219.  The non-compete is referring to the "Akira FDA ORA BIT support contract" for which Ms. Houle was hired, Compl. ¶¶ 41-4, but there is no allegation in the Complaint, nor could there be, that Ms. Houle is "doing substantially the same work" for Conceptant as she did for Akira under the FDA ORA BIT contract.

thus, no cause of action for breach of contract.  And the assertion that, had it not been for Ms. Houle's alleged breach of contract, Akira had "likely more opportunities to contract with FDA and other federal agencies," is pure conjecture.  For these reasons, Count 9 should be dismissed with prejudice.

## **CONCLUSION**

As stated at the outset, Akira's Complaint does not "raise a right to relief above the speculative level" and fails to "nudge the claims across the line from conceivable to plausible." Kincaid, 2017 U.S. App. LEXIS 3854, at *3; Birmingham, 846 F.3d at 92.  Because the Complaint is based on "a sheer possibility" of claims that are "devoid of factual enhancement," id., and for the other reasons stated above, Defendants' Motion to Dismiss the Complaint should be granted, and the claims asserted in the Complaint should be dismissed with prejudice.

May 26, 2017                                        Respectfully submitted,

_____/s/_____
Elaine Charlson Bredehoft
Virginia Bar No. 23766
ecb@cbcblaw.com
Peter C. Cohen
Virginia Bar No. 66346
pcohen@cbcblaw.com
CHARLSON BREDEHOFT
  COHEN & BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile

*Counsel for Defendants, Conceptant, Inc.,*
  *NuCognition, Inc., Joshua Phipps,*
  *Andrey Mikhalchuk, and Lisa Houle*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of May, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Christopher R. Shipplett
Virginia Bar No. 74210
chris.shiplett@randolphlaw.com
RANDOLPH LAW, PLLC
252 N Washington Street
Falls Church, Virginia 22046
(703) 652-3039 Telephone
(703) 852-3976 Facsimile

*Counsel for Plaintiff,*
 *Akira Technologies, Inc.*


_____/s/_____
Peter C. Cohen
Virginia Bar No. 66346
pcohen@cbcblaw.com
CHARLSON BREDEHOFT
 COHEN & BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile

*Counsel for Defendants, Conceptant, Inc.,*
 *NuCognition, Inc., Joshua Phipps,*
 *Andrey Mikhalchuk, and Lisa Houle*