**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| AKIRA TECHNOLOGIES, INC. | |
| Plaintiff, | |
| v. | Civil Action No. 1:17cv00412 (LO/IDD) |
| CONCEPTANT, INC., *et al.* | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF AKIRA TECHNOLOGIES, INC.'S MOTIONS FOR LEAVE TO DISMSIS COUNTS 1-3 OF ITS COMPLAINT AGAINST ALL DEFENDANTS AND TO DISMISS THE CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

After choosing this Federal Court to pursue its action; after nearly four months of extensive and costly discovery during which it made dozens of material admissions against its claims;[1] after waiting a month after the close of discovery and one day before the deadline for dispositive motions; after the parties received their trial date at a Final Pretrial Conference and filed their pretrial disclosures (both original and amended); and after the Defendants had already filed their dispositive motion per the Court's Order; the plaintiff, Akira Technologies, Inc. ("Akira"), now wishes to call it quits by asking the Court to effectively dismiss the entire action at this juncture (on the brink of dispositive rulings), via a voluntary dismissal of the federal Count, followed by a divestiture of jurisdiction on all remaining Counts in the First Amended Complaint.

Defendants adamantly oppose Akira's eleventh-hour plea to be saved from the consequences of the choices and admissions it has made in this case, and from facing the adverse

[1] All of which were documented in Defendants' Memorandum in Support of their Motion for Summary Judgment filed on March 8, 2018 [Docket #53] ("Summary Judgment Memorandum").

judgments as a matter of law that should be entered for the Defendants on all eight Counts in the First Amended Complaint.[2] The Fourth Circuit and this Court have addressed the tactic employed here by Akira and have made clear their lack of receptiveness to it by routinely denying such motions. The Court is asked to do the same here. Based on the case law that follows, Akira's motion should be denied in all respects because it was filed well after the close of discovery and the Final Pretrial Conference; the case has progressed to the summary judgment stage; Defendants have already filed their summary judgment motion; Akira seeks to avoid adverse judgments on its claims; and Akira's explanation for its motion, and its timing, is neither credible nor sufficient.

**BACKGROUND TO AKIRA'S MOTION TO DISMISS AT THIS JUNCTURE OF THE CASE**

Discovery in this case began on October 16, 2017, and ended on February 9, 2018. In addition to the eight Counts in the First Amended Complaint, the discovery also covered the counterclaims that were filed by Defendants Phipps and Mikhalchuk that involved multiple transactions they worked on while employed by Akira. [Docket # 23-24]. During discovery, the parties exchanged over 1,000 combined discovery requests (i.e., interrogatories, document requests, and requests for admissions – 259 requests by Akira, and 860 combined requests by the five named defendants). Dfs. Opp. Ex. 1, ¶¶ 3-5.[3] In response, Akira produced 243,438 pages of documents, plus thousands more in 40 native files. Id. The defendants produced 11,338 pages of documents, and four native files. Id. Six depositions were taken, producing 1,347 pages of transcripts. Id.[4]

[2] See Defendants' Summary Judgment Memorandum filed on March 8, 2018 [Docket #53].

[3] "Dfs. Opp. Ex." refers to the exhibits that accompany this opposition brief.

[4] Neither side in this case filed any motions to compel or motions for protective orders.

Per the Court's Order of October 16, 2017 [Docket #29], the parties prepared and filed Rule 26(a)(3) Pretrial Disclosures on February 15, 2018, which included their lists of proposed trial exhibits. [Docket #45-47]. To prepare their lists, the parties had to spend considerable time and expense culling through the thousands of documents produced in the case. On February 15, 2018, the Court held a Final Pretrial Conference at which it set a schedule for dispositive motions, a hearing on the dispositive motions, and a trial date. [Docket # 48]. Dispositive motions were set for March 9, 2018, with oppositions (March 23, 2018) and replies (March 30, 2018). Id. The hearing on dispositive motions was set for April 6, 2018. Id. The trial date was set for July 31, 2018. Id. The Court also permitted the parties to file Amended Rule 26(a)(3) Pretrial Disclosures by March 8, 2018. Id.

Between February 15, 2018 and March 8, 2018, undersigned counsel expended considerable time and expense (1) culling through the documents produced in the case in order to prepare and file Defendants' Amended Rule 26(a)(3) Pretrial Disclosure which included an amended trial exhibit list, and (2) preparing Defendants' Motion for Summary Judgment to meet the Court's deadline of March 9, 2018. Dfs. Opp. Ex. 1, ¶ 6. On March 6, 2018, Akira filed a stipulation that voluntarily dismissed all Counts in the First Amended Complaint against Defendants Conceptant, Inc., and NuCognition, Inc., because, as Akira acknowledged, "evidence does not exist to support the claims" against these defendants. [Docket #50-51].

On March 8, 2018, undersigned counsel filed two pleadings with the Court, per the Order of February 15, 2018. First, an Amended Rule 26(a)(3) Pretrial Disclosure containing an amended trial exhibit list. [Docket #62]. Second, a Motion for Summary Judgment on behalf of Defendants Phipps, Houle, and Mikhalchuk seeking judgment as a matter of law on all Counts of the First Amended Complaint (Counts 1-8). [Docket #52]. The Memorandum submitted in

support of the Motion for Summary Judgment was 37 pages, and 32 exhibits were attached. [Docket #53]. In the Memorandum, undersigned counsel set out, in detail, the dozens of material admissions made by Akira during the discovery phase of the case, as well as from Akira's CEO, owner, and President, which dispose of all eight Counts as a matter of law. Id.

Later that day on March 8, 2018, *after* Defendants had filed their Motion for Summary Judgment, and one day before the summary judgment deadline, Akira filed the instant motion asking the Court for permission at this stage of the case to voluntarily dismiss Counts 1-3 against Defendants Phipps, Houle, and Mikhalchuk, because, as Akira admits, "evidence does not exist to support the claims." [Docket #59 at 2]. Counts 1-3 pled violations of the Defense of Trade Secrets Act, the Virginia Uniform Trade Secrets Act, and Tortious Interference with a Contract and Business Expectancy. These first three Counts of the First Amended Complaint were at the heart of Akira's case. In its motion to dismiss, Akira claims that it did not discover the lack of evidence for Counts 1-3 until after the close of discovery. As shown below, Akira and its counsel were fully aware of the absence of any evidentiary basis for Counts 1-3 much earlier, during the discovery phase of the case, and even before they filed suit.

Akira further claims in its motion to dismiss that dismissal of Counts 1-3 at this juncture of the case, well after the close of extensive and costly discovery, and after Defendants prepared and filed their dispositive motion on Counts 1-3 in accordance with the Court's Order, will not result in any prejudice to Defendants. As shown below, the real reason Akira seeks to voluntarily dismiss Counts 1-3 at this time (a month after discovery closed, and on the eve of summary judgment) is because it is aware, and has been for some time, that the admissions it has made in this case dispose of Counts 1-3 as a matter of law, and seeks, at the eleventh hour, and

with the Court's assistance, to avoid an imminent adverse judgment on these Counts, which, if allowed, would be grossly prejudicial to Defendants.

Akira's motion goes further, seeking the outright dismissal of the entire case for lack of jurisdiction, thereby immunizing Akira from any imminent adverse rulings on any of the Counts in the First Amended Complaint from being issued by the Federal Court *in whose forum it chose to prosecute its claims.* The tactic being employed by Akira brings to mind the Fourth Circuit's quotation of Judge Phillips' dissent in Davis v. USX Corp., 819 F.2d 1270, 1277 (4th Cir. 1987):

> It is unfair to a defendant to let a claimant select a forum in which to prosecute her claims, then be allowed to bail out scotfree to try the same claims in another forum after losing on the merits or seeing the adverse handwriting on the wall in the first chosen forum.

Skinner v. First American Bank, 1995 U.S. App. LEXIS 24237, at *7 (4th Cir. Aug. 28, 1995).

What Judge Phipps observed in Davis, and the Fourth Circuit in Skinner, is what Akira is attempting to accomplish in the instant case. Akira *chose* this Federal Court to prosecute its claims against Defendants. Now, after the close of extensive and expensive discovery spawned by its lawsuit during which Akira made dozens of material admissions against its own claims, and after Defendants complied with the Court's Order and timely moved for summary judgment on Counts 1-3 on the basis of those admissions, Akira turns to the Court for permission "to bail out scotfree" in order to avoid the consequence of judgment as a matter of law being entered for Defendants on Counts 1-3, as well as on the remaining Counts in the First Amended Complaint.[5]

Akira should not be permitted "to bail" at this point in the case, and its motion should be denied.

[5] After moving to dismiss Counts 1-3 and the remaining Counts for lack of jurisdiction, Akira then filed its own motion for summary judgment on Counts 4-8 (the same Counts it seeks to dismiss) and on Defendants' counterclaims. [Docket #70-71].

## LEGAL ARGUMENT

### I. APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 41(a)(2) provides that after the opposing party has served an answer or motion for summary judgment, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Federal Rule of Civil Procedure 15(a)(2) provides that once the pleading stage of the case is done, "a party may amend its pleading only with the opposing party's written consent or the court's leave." "Because Rule 41 provides for the dismissal of *actions*, rather than *claims*, Rule 15 is technically the proper vehicle to accomplish a partial dismissal." Skinner, 1995 U.S. App. LEXIS 24237, at *4 (emphasis in original). "However, similar standards govern the exercise of discretion under either rule." Id at **4-5 (quoting 5 J. Moore's Federal Practice and Procedure 41.06-1, at 41-92 to -93 (1995) ("Since the structure of the two rules is similar, and since the district court's discretion is involved when leave of court is required, whether plaintiff's motion is made under Rule 15 or under Rule 41(a)(2), the choice of rules is largely a formal matter")). Accordingly, the Court may "analyze [Akira]'s claim in light of cases applying both rules." Id at *5; see Miller v. Terramite Corp., 114 Fed. Appx. 536, 539-40 (4th Cir. 2004) ("[S]imilar standards govern the exercise of discretion under either rule").

Rule 15(a)(2) provides that "leave [to amend] shall be freely given when justice so requires." "However, leave to amend is not to be granted automatically, and the decision whether to do so rests within the sound discretion of the district court." Skinner, 1995 U.S. App. LEXIS 24237, at *5; see Deasy v. Hill, 833 F.2d 38, 40 (4th Cir. 1987). "A district court may properly deny leave in light of undue delay, bad faith, or prejudice to the opposing party." Skinner, 1995 U.S. App. LEXIS 24237, at *6; see Miller, 114 Fed. Appx. at 539-40. "In

particular, the court may take into account the stage of the proceedings when deciding whether to grant leave." Skinner, 1995 U.S. App. LEXIS 24237, at *6; see Deasy, 833 F.2d at 41. "Moreover, a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays in seeking an amendment is acting contrary to the spirit of the rule." Deasy, 833 F.2d at 41 (quoting Moore's Federal Practice, § 1488 (1971)).

"A motion to dismiss under Rule 41(a)(2) also lies within the district court's discretion." Skinner, 1995 U.S. App. LEXIS 24237, at *6; see Davis, 819 F.2d at 1273. "In considering a motion for voluntary dismissal, a district court must focus primarily on protecting the interests of the defendant, and the court may deny the motion if the defendant would be unfairly prejudiced." Skinner, 1995 U.S. App. LEXIS 24237, at *6; see Andes v. Versant Corp., 788 F.2d 1033, 1036-37 (4th Cir. 1986); Teck General Partnership v. Crown Central Petroleum Corp., 28 F. Supp. 2d 989, 991 (E.D. Va. 1998); see also Williams v. Brumbaugh, 2011 U.S. Dist. LEXIS 55627, at *7 (E.D. Va. May 24, 2011) ("Dismissal under Rule 41(a) is limited to those instances where minimal prejudice will result to the defendant").

"The expenses of discovery and preparation of a motion for summary judgment may constitute prejudice sufficient to support denial of a voluntary dismissal." Skinner, 1995 U.S. App. LEXIS 24237, at *6; Andes, 788 F.2d 1033 at 1036-37; see Armstrong v. Frostie Co., 453 F.2d 914, 916 (4th Cir. 1971) (acknowledging that "summary judgment [ ] is normally marked by extensive preparation"). Other factors to consider include "excessive delay and lack of diligence on the part of the movant," "insufficient explanation of the need for a voluntary dismissal," as well as "the present stage of litigation." Howard v. Inova Health Care Servs., 302 Fed. Appx. 166, 178-79 (4th Cir. 2008); Miller, 114 Fed. Appx. at 539; Campbell v. United States, 2011 U.S.

Dist. LEXIS 12305, at *11 n. 1 (E.D. Va. Feb. 8, 2011) ("That list is not exhaustive, and a court should consider any other relevant factors depending on the circumstances of the case").

Notably, "we [the Fourth Circuit] have [ ] found on multiple occasions that a district court does not abuse its discretion in denying a motion for voluntary dismissal if the case has advanced to the summary judgment stage and the parties have incurred substantial costs in discovery." Howard, 302 Fed. Appx. at 179-80 (citing four earlier Fourth Circuit decisions). Indeed, "the Fourth Circuit has specifically held that a motion to voluntarily dismiss under Rule 41(a)(2) should be denied when a plaintiff seeks to circumvent an expected adverse result, and that denial of voluntary dismissal is appropriate where summary judgment is imminent." Nesari v. Taylor, 806 F. Supp. 2d 848, 861 (E.D. Va. 2011) (citing Skinner and Davis supra); see Skinner, 1995 U.S. App. LEXIS 24237, at **6-7 ("[D]enial of voluntary dismissal is appropriate where summary judgment is imminent") (quoting Davis, 819 F.2d at 1274)).

Similarly, when a case "has proceeded far along the path of litigation," including "[t]he parties [holding] a pretrial conference with the Court, and the Court issued a scheduling order, which included various deadlines the Court expected the parties to following" and the case "now sit[s] at the summary judgment stage," the plaintiff "needs an exceedingly compelling justification." Campbell, 2011 U.S. Dist. LEXIS 12305, at **11-12. This is especially the case when "the Plaintiff chose to file this case in federal court and therefore voluntarily subjected [itself] to its procedural rules and deadlines." Williams, 2011 U.S. Dist. LEXIS 55627, at *8; see Steves & Sons, Inc. v. Jeld-Wen, Inc., 2017 U.S. Dist. LEXIS 208749, at *8 (E.D. Va. Dec. 19, 2017) (voluntary dismissal denied in part because the plaintiff chose the federal forum and committed itself to the Court's "detailed schedule").

Based on these standards, Akira's motion to dismiss Counts 1-3 of its First Amended Complaint should be denied.

## II. AKIRA'S MOTION TO DISMISS COUNTS 1-3 – AT THIS STAGE OF THE CASE – SHOULD BE DENIED

### A. Akira's Motion Comes One Month After the Close of Discovery

Discovery in this case closed on February 9, 2018. Akira filed its motion to dismiss on March 8, 2018, one month after the close of discovery (and one day before dispositive motions were due). The Fourth Circuit and this Court have routinely denied such motions when a plaintiff seeks to voluntarily dismiss claims after the close of discovery. See Howard, 302 Fed. Appx. at 179-80 (voluntary dismissal properly denied when sought "more than three weeks after discovery closed"); Miller, 114 Fed. Appx. at 540 (voluntary dismissal properly denied when "[t]he motion came well after discovery had closed"); Skinner, 1995 U.S. App. LEXIS 24237, at *8 (voluntary dismissal properly denied when "[t]he motion was made after discovery had been completed" and after the defendant "had already incurred significant time and expense in discovery"); Andes, 788 F.2d at 1036-37 (voluntary dismissal properly denied where the defendant "already incurred significant expenses … by incurring substantial costs of discovery, through depositions [and] production of documents…"); Nesari, 806 F. Supp. 2d at 861-62 (voluntary dismissal denied "in light of the late stage of this litigation – where discovery has closed").

In denying the plaintiff's motion to voluntarily dismiss claims in Steves, 2017 U.S. Dist. LEXIS 208749, at *8, the Court took note of the fact that "[s]everal rounds of document production have been completed, and, likewise, the analysis of documents is complete, all depositions have been taken, paper discovery responses and supplements have been filed, and

fact discovery has closed…" As described above, the various rounds of discovery that took place in the instant case were far greater than in Steves. See Dfs. Opp. Ex. 1, ¶¶ 3-5.

In denying the plaintiff's motion to voluntarily dismiss claims in Nesari, F. Supp. 2d at 861, the Court took note of the fact that the defendant was made to produce over 7,000 pages of documents in response to the plaintiff's discovery request, "and then filed a comprehensive Motion for Summary Judgment on the basis of that record." In the instant case, the Defendants produced in excess of 11,000 pages of documents and waded through more than 250,000 pages of documents produced by Akira on both Akira's claims and the counterclaims (see Dfs. Opp. Ex. 1, ¶ 3), after which they filed a comprehensive Motion for Summary Judgment on all Counts in the First Amended Complaint, per the Court's Order of February 15th.

### B. Akira Filed Its Motion to Dismiss After the Case Had Progressed to the Summary Judgment Stage, and After Defendants Had Filed Their Summary Judgment Motion on Counts 1-3

On February 15, 2018, the Court held a Final Pretrial Conference at which it set a schedule for dispositive motions and a hearing on the motions (April 6, 2018). [Docket #48]. In accordance with the Court's schedule, on March 8, 2018, Defendants filed their Motion for Summary Judgment on all eight Counts in the First Amended Complaint, along with a 37-page Memorandum and 32 exhibits. [Docket #52-53]. Later that day, Akira filed its motion to dismiss the entire case. [Docket #58-60].

The Fourth Circuit and this Court have routinely denied motions when a plaintiff seeks to voluntarily dismiss claims at the summary judgment stage of the case, and especially when the dismissal request comes after the defendant has already moved for summary judgment. See Howard, 302 Fed. Appx. at 178-81 (voluntary dismissal properly denied when sought "after [the defendant] had filed its summary judgment motion"); Miller, 114 Fed. Appx. at 539-40

(voluntary dismissal properly denied when sought after the defendant had filed its dispositive motion, agreeing with the district court that granting a dismissal request at that stage of the case "would waste judicial resources"); Andes, 788 F.2d at 1036-37 (voluntary dismissal properly denied where the defendant "already incurred significant expenses [ ] in responding to [plaintiff]'s complaint and filing motions and memoranda in support of summary judgment"); Armstrong, 453 F.2d at 916 (voluntary dismissal properly denied where defendant had already moved for summary judgment); Nesari, 806 F. Supp. 2d at 861-62 (voluntary dismissal denied "in light of the late stage of this litigation, where … defendants have filed a compelling motion for summary judgment that is ripe for adjudication … [and] granting the petitioner's motion to dismiss [ ] would simply 'waste judicial resources'") (quoting Miller supra).

As the Court explained in Williams, 2011 U.S. Dist. LEXIS 55627, at *7:

> Dismissing the case without prejudice while a summary judgment motion is pending would prejudice the Defendant, who has expended considerable effort to respond to the deficiencies in the Plaintiff's pleadings and to prepare his case for summary judgment and trial.

Indeed, motions to voluntarily dismiss claims do not fare well even when they are filed before dispositive motions are filed. See Skinner, 1995 U.S. App. LEXIS 24237, at *2 (voluntary dismissal properly denied when filed "just one week before the deadline for dispositive motions"); Steves, 2017 U.S. Dist. LEXIS 208749, at **8, 13 (though requested three months before the deadline for summary judgment motions, voluntary dismissal denied in part because "there is a detailed schedule established for every pretrial event necessary to prepare the case for trial … [including] a schedule for summary judgment proceedings … [and] a trial date was set").

In the instant case, Akira not only filed its motion to dismiss after the case had reached the summary judgment stage, it did so after Defendants had already filed their motion for

summary judgment. Akira's motion also came after the Court had held the Final Pretrial Conference at which it set the schedule for dispositive motions and trial.

**C. Akira Moved to Dismiss Counts 1-3 on the Day Before Dispositive Motions Were Due In Order to Avoid an Adverse Judgment on These Counts, and On the Other Counts in the First Amended Complaint**

The Fourth Circuit and this Court have held that motions to voluntarily dismiss claims should be denied when it is suspected that the plaintiff is seeking to evade an adverse ruling. See Skinner, 1995 U.S. App. LEXIS 24237, at **7-9 (voluntary dismissal properly denied "when the case was ripe for summary judgment" in which the defendant "had already incurred significant time and expense … in preparation for a summary judgment motion … [and] the only apparent effect of the amendment on the [plaintiffs] would have been to permit them to dismiss their federal claim and thereby avoid an adverse ruling in federal court"); Teck, 28 F. Supp. 2d at 992 ("[I]t is settled that a plaintiff may not obtain a non-prejudicial voluntary dismissal simply to circumvent adverse rulings").

In the instant case, the Court should conclude that Akira filed its motion to dismiss the case one day before summary judgment motions were due, and after the Defendants had moved for summary judgment on all eight Counts in the First Amended Complaint, in order to avoid an imminent adverse ruling on its Counts. Certainly, at a minimum, that would be the effect of granting Akira's motion at this time. As the Defendants detailed in its Summary Judgment Memorandum filed on March 8th [Docket #53], Akira made the following dispositive admissions that resolve Counts 1-3 in their favor as a matter of law:

**Counts 1-2 (alleged trade secrets violations)**

- Akira admits a software prototype called the "Patient Cohort Tool," which it claims Defendants misappropriated, does not exist (citing Defendants' Statement of Material Facts ¶ 23).

- Akira admits it had no plans to develop a "Patient Cohort Tool;" made no progress towards developing such a prototype; that a "Patient Cohort Tool" was never its idea to begin with; and no "Patient Cohort Tool" is stored in any of Akira's allegedly secure platforms. Id. ¶¶ 24-25, 27.

- Akira admits that no "Patient Cohort Tool" appears in Conceptant's proposal to the FDA. Id. ¶ 38.

- Akira admits the non-existence of a "Semantic Layer Integration with eHMP;" the non-existence of a "Business Rules and Business Process Management Platform Implementation with eHMP;" and the non-existence of the "software prototype" described in FAC ¶ 63, all of which Akira accused Defendants of "misappropriating." Id. ¶¶ 29-31.

- Akira admits it has no evidence of any "misappropriation" of such "software prototypes," or of Defendants disclosing such things to anyone outside of Akira. Id.

- Akira admits such non-existent "prototypes" do not appear in Conceptant's proposal to the FDA. Id. ¶¶ 39-41.

- Akira admits that no "software prototype" or "trade secret" that is stored in any of its platforms appears in the Conceptant proposal, and that Defendants did not propose using any of Akira's so-called "prototypes" or "trade secrets" in the Conceptant proposal. Id. ¶¶ 54-57.

- Akira admits it has no evidence of Defendants "misappropriating" its business development documents or disclosing such documents to anyone outside of Akira, including its so-called "Pipeline Reports," "Total Contract Value Reports," "sales documents," "business development documents," "business strategy documents," "regularly saved proposals," "past performance write-ups," "sales presentations," "sales spreadsheets," "client data," "potential client data," "sales status memos," and "sales status briefings." Id. ¶¶ 32-36. Akira further admits that some of these documents do not even exist. Id. ¶¶ 33, 35 ("Total Contract Value Reports" and "past performance write-ups").

- Akira admits that none of its business development documents were disclosed in Conceptant's proposal to the FDA. Id. ¶¶ 42-52.[6]

[6] As further pointed out by Defendants, Akira failed to identify an expert for its trade secrets claims, further disposing of Counts 1-2. See Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale Ltd., 859 F. Supp. 2d 771, 781 (E.D. Va. 2012) (experts are expected for such claims).

**Count 3 (alleged tortious interference with contract or business expectancy)**

- Akira CEO and owner, Mr. Chennamaraja, admits he independently learned of the 2016 BAA opportunity in July 2016 and decided that Akira would not submit a proposal or bid in response to it, disposing of Akira's claim that Defendants' conduct caused Akira to be unaware of the opportunity or "interfered" with Akira's ability to respond to it (citing Defendants' Statement of Material Facts ¶¶ 64-65).

- Akira admits any proposal it would have submitted in response to the 2016 BAA would not have been the same as Conceptant's proposal. Id. ¶¶ 5, 67-68, 70.

- Akira admits that even if it had submit a proposal to the 2016 BAA, it is not certain at all that it would have been awarded the contract. Id. ¶¶ 71-72.

- Akira admits it is unaware of and has no evidence of interference by Defendants with any of its current contracts, future business opportunities, specific projects, or other specific business opportunities, including by entities formed by Defendants. Id. ¶¶ 74-82.

Defendants' Summary Judgment Memorandum also detailed the material admissions made by Akira that resolve Counts 4-8 in their favor as a matter of law. See Docket #53 at 26-37 (with citations to the evidentiary record). Given Akira's admissions and the dispositive effect on its claims, it is reasonable to conclude that the timing of Akira's motion to dismiss (on the eve of summary judgment and after Defendants had filed their motion) was no accident, and that it seeks to avoid the potential of adverse judgments being entered against its claims by the Federal Court in which it chose to prosecute its claims.[7]

[7] Another way to view Akira's motion is that it constitutes an admission by Akira that it is unable to meet its burden of establishing a genuine issue of material fact on Counts 1-3 (see Akira's brief at 2, "evidence does not exist to support the claims"), but rather than face the usual consequence of judgment as a matter of law being entered against it, seeks instead to be protected from that inevitable result via an abrupt and last-minute dismissal of the case notwithstanding all the parties have gone through to get to this point. If this is permitted, plaintiffs from all over, under similar circumstances, would file such eleventh-hour motions asking the Court to effectively immunize them from the force of the summary judgment rule, this nullifying the rule.

**D. Akira's Explanation for Why It Moved to Dismiss Counts 1-3 At This Stage of the Case Is Neither Credible Nor Sufficient**

The Fourth Circuit has held that a voluntary dismissal is properly denied where "the record fails to support [the plaintiff]'s explanation of the need for voluntary dismissal." See Howard, 302 Fed. Appx. at 180. In Howard, the plaintiff claimed that he did not become aware of the basis for a voluntary dismissal until after the close of discovery based on documents produced by the defendant late in the discovery process. Id. However, the record in Howard showed that the defendant's document production was in response to "[the plaintiff]'s last-minute requests at the end of the discovery period," and that, regardless of any late discovery, the plaintiff was plainly aware of the basis for dismissal earlier in time and was dilatory in bringing forth his motion. Id. at 180-81.

It is the same in the instant case. Akira claims that it was not until after the close of discovery that it first became aware of the lack of evidentiary support for Counts 1-3 when it received the Defendants' last batch of documents in response to a discovery request. Akira Br. at 3-4. However, the timing of Defendants' document production was Akira's doing, because it did not serve the relevant and more specific request until January 10, 2018, which gave Defendants until February 9, 2018, the last day of discovery, to respond. Dfs. Opp. Ex. 1, ¶ 7.[8] Moreover, if Defendants' document production on February 9th is what truly put Akira on notice of the absence of evidence for Counts 1-3, which is extremely doubtful,[9] Akira fails to explain why it made no reference to the matter at the Final Pretrial Conference on February 15th (at which the Court, with counsel's agreement, set a schedule and hearing for dispositive motions), and why

[8] Akira states that Defendants "supplemented production again with documents on February 13," but that involved one document that had inadvertently been left out from an earlier production and had nothing to do with the February 9th production. Dfs. Opp. Ex. 1, ¶ 8.

[9] Akira acknowledges that all the February 9th documents did was show how much money Conceptant received from the FDA for its BAA work. Akira Br. at 3.

Akira waited a *full month* – and until the day before dispositive motions were due, and after Defendants' dispositive motion was already on file – before seeking to dismiss the entire case (on March 8th).

Similarly, Akira claims it was not until it received documents from a third-party (Yimam Kelemework) that it realized there was no evidentiary basis for Counts 1-3. Akira Br. at 3-4. However, Akira's counsel received the third-party documents on February 7, 2018 (Dfs Opp. Ex. 1, ¶ 9), which raises the same question as with the February 9th production. If the third-party documents received on February 7th is what truly put Akira on notice of the absence of evidence for Counts 1-3, which again is extremely doubtful,[10] Akira fails to explain why no mention of this was made at the Final Pretrial Conference on February 15th, and why Akira waited a month, and after a dispositive motion had been filed on its claims, before seeking a dismissal of the entire case (March 8th).

In any event, as in Howard, regardless of any claim of "last-minute" discovery, the record shows that Akira and its counsel were aware of the lack of evidentiary support for Counts 1-3 much earlier in time, during the early phases of discovery, and even before they filed this suit. Many of the dispositive admissions Akira made that it possesses no knowledge or evidence to support its claims were made in the December 2017 and January 2018 time period. See, e.g., Ex. 3, 6, and 18 attached to Defendants' Summary Judgment Memorandum. Indeed, as indicated in the summaries above, many of Akira's admissions show that it knew there was no evidentiary basis for Counts 1-3 *well before it filed suit*.

For example, Akira accused Defendants of misappropriating a variety of "software prototypes" that it admitted (in response to discovery requests) were never developed and do not exist. Surely Akira and its counsel were aware of this fact before filing suit. Similarly, Akira

[10] The documents produced by Ms. Kelemework were immaterial to Counts 1-3. Id.

accused Defendants of misappropriating certain business development documents that it admitted (in response to discovery requests) do not exist. Akira and its counsel must have known this fact as well before filing suit. Akira also failed to identify an expert by the Court-imposed deadline of January 5, 2018.[11] Surely, given the case law, Akira and its counsel knew *at least by that date* that Counts 1-2 were going nowhere. See Teck, 28 F. Supp. 2d at 992 (noting the plaintiff's failure to identify an expert during discovery as an additional basis to conclude that the plaintiff knew or should have known earlier in time of no basis for its claim and such dilatoriness was not deserving of a voluntary dismissal).

The same applies to Count 3, the tortious interference claim. At his deposition, Mr. Chennamaraja testified that he became aware of the 2016 BAA in July 2016 and Akira had the opportunity to respond to it, but he decided that Akira would refrain from submitting a proposal or bid in response. See Ex. 4 at 182:16-183:2, 184:6-185:21, 200:13-21 (Defendants' Summary Judgment Memorandum). *Surely Akira and its counsel were aware of these facts before filing suit.* These undisputed facts, by themselves, defeat Count 3, which should not have been brought in the first place.

In short, the record is clear that Akira and its counsel were aware earlier in time (much earlier) of the lack of evidence for Counts 1-3 and were dilatory in filing the motion to dismiss. See Steves, 2017 U.S. Dist. LEXIS 208749, at **9-10 (denying voluntary dismissal in part because the basis for the request "became clear" to the plaintiff months earlier and it "sat idly by and did nothing … [for] several months"); Nesari, 806 F. Supp. 2d at 862 (denying voluntary dismissal in part due to the plaintiff's "excessive delay and lack of diligence"). In short, far from providing an "exceedingly compelling justification," Campbell, 2011 U.S. Dist. LEXIS 12305, at

[11] The January 5, 2018 deadline for declaring experts was agreed to by the parties and adopted by the Court in its Order of November 9, 2017. [Docket #33, 35].

**11-12, Akira's explanation for its motion, and the timing of it, is neither credible nor sufficient.

**CONCLUSION**

The standards for granting Akira's motion to dismiss at this juncture of the case are high, and especially so given Akira's choice of this forum to adjudicate its claims. See cases supra (motion is "not to be granted automatically;" the Court "must protect the interests of the defendants;" "limited to those instances where minimal prejudice will result to the defendant;" plaintiff must provide "exceedingly compelling justification;" motion denied "if the defendant would be unfairly prejudiced;" motion denied if "insufficient explanation" is provided or there is "undue delay").

As set forth above, Akira's motion does not meet these high standards, and its motion to dismiss Counts 1-3 should be denied. For the same reasons, the Court should deny the second part of Akira's motion (to divest itself of jurisdiction at this point in the case and effectively dismiss the entire case). See Miller, 114 Fed. Appx. at 540-41 (motion to remand the entire case after the close of discovery, and after the parties filed dispositive motions, was properly denied because it would "waste judicial resources"); see Steves, 2017 U.S. Dist. LEXIS 208749, at **13-14 ("That delay will be prejudicial to [the non-movant], which needs to have this litigation resolved as promptly as possible so that it can staunch the flow of legal fees and get about its business with all the issues presented here resolved").

March 19, 2018

Respectfully submitted,

/s/

Elaine Charlson Bredehoft
Virginia Bar No. 23766
ecb@cbcblaw.com
Peter C. Cohen
Virginia Bar No. 66346
pcohen@cbcblaw.com
David E. Murphy, VSB 90938
dmurphy@cbcblaw.com
CHARLSON BREDEHOFT
COHEN & BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile

*Counsel for Defendants, Joshua Phipps, Andrey Mikhalchuk, and Lisa Houle and Counter-Plaintiffs, Joshua Phipps and Andrey Mikhalchuk*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of March, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Christopher R. Shiplett
Virginia Bar No. 74210
chris.shiplett@randolphlaw.com
RANDOLPH LAW, PLLC
252 N Washington Street
Falls Church, Virginia 22046
(703) 652-3039 Telephone
(703) 852-3976 Facsimile

*Counsel for Plaintiff,*
*Akira Technologies, Inc.*

___/s/______________________
Peter C. Cohen
Virginia Bar No. 66346
pcohen@cbcblaw.com
CHARLSON BREDEHOFT
COHEN & BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile

*Counsel for Defendants, Joshua Phipps,*
*Andrey Mikhalchuk, and Lisa Houle and*
*Counter-Plaintiffs, Joshua Phipps and*
*Andrey Mikhalchuk*